1  LAW OFFICES OF DOUGLAS J. CAMPION, APC
2  Douglas J. Campion (SBN 75381)
   16855 W. Bernardo Dr., Suite 255
3  San Diego, CA 92127
4  doug@djcampion.com
   Telephone: (619) 299-2091
5  Facsimile: (619) 858-0034

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KARLA Y. SOUSA, on behalf of herself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>7- Eleven, Inc.,<br><br>　　　　Defendant. | Case No. **'19 CV 2142 BEN RBB**<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ.* (TELEPHONE CONSUMER PROTECTION ACT)**<br><br>**DEMAND FOR JURY TRIAL** |

Sousa v. 7-Eleven, Inc. Complaint

Plaintiff Karla Y. Sousa (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

## NATURE OF ACTION

1. Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of 7-Eleven, Inc. ("7-Eleven" or "Defendant") in negligently, knowingly, and/or willfully contacting Plaintiff and the Class Members via text messages on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (hereinafter referred to as the "TCPA"), and the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. § 64.1200 ("Rules"). Defendant engaged in an especially pernicious for of marketing: the unauthorized transmission of text messages to persons throughout the nation without their consent in an attempt to have those persons "opt in" to future text message advertising.

2. By effectuating these unauthorized text messages or wireless spam, Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessary accompanies such unwanted text messages, but also because consumers frequently have to pay their cell phone service providers for the receipt of such text messages.

3. In order to redress these injuries, Plaintiff, on behalf of herself and a nationwide class of similarly situated individuals, brings this action for injunctive relief and statutory damages under the TCPA resulting from Defendant's illegal actions. Plaintiff also seeks costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

4. This matter in controversy exceeds $5,000,000, as each member of the proposed Class of tens of thousands is entitled to up to $1,500.00 in statutory

Sousa v. 7-Eleven, Inc. Complaint                       - 1 -

damages for each call that has violated the TCPA.  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  Further, Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state.  Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.  This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

5. Venue is proper in the United States District Court for the Southern  District of California pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a), and Cal. Civ. Code Proc. Section 410.10, because Plaintiff resides in this judicial district; Plaintiff received the text message at issue while in this district; Defendant sends such text messages for business purposes to residents of this judicial district; Defendant has convenience stores in, and does business in, this district, and Defendant's contacts with this District are sufficient to subject them to personal jurisdiction.  Defendant is deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced.

## PARTIES

6. Plaintiff Karla Sousa is, and at all times mentioned herein was, an individual citizen of the State of California, who resides in San Diego, California.

7. 7-Eleven, Inc. is a subsidiary of Kabusiki-gaisha Sebun ando Ai Horudingusu, (Seven-Eleven Japan Co., Ltd.) with its headquarters in Tokyo, Japan.  7-Eleven, Inc. is the operator, franchisor and licensor of the largest convenience store chain in North America.

8. Defendant is a Texas corporation that engages in the sale of food and related products through stores located throughout this District, San Diego County, California and the United States, as well as internationally, with its headquarters located in Dallas, Texas.

# THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA,[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

10. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

11. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

12. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[4] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*
[2] 47 U.S.C. § 227(b)(1)(A)(iii).
[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).
[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[5]

## FACTUAL ALLEGATIONS

13.   At all times relevant herein, Plaintiff was an individual residing in the State of California, and within this judicial district.  Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14.   On information and belief, the decisions complained of herein, relating to the sending of text messages through the use of an "automatic telephone dialing system" and/or using "an artificial or prerecorded voice" to call consumers' cellular telephones without their prior express consent, and the procedures used in obtaining the cellular phone numbers to be called, and to do so without "scrubbing" them or otherwise determining the call recipients' prior express consent, originated from Defendant and were implemented by Defendant and their agents, all of whom sent the text messages / calls to cellular phones complained of herein on behalf of Defendant.  A text message is considered a "call" under the TCPA. Any and all decisions about the calling procedures originated with or were approved by Defendant.

15.   One way to advertise is through ShortMessage Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

16.   An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings or otherwise acknowledges the receipt of the text message, alerting him or her that a text is being received. As cellular telephones are inherently mobile and are

---

[5] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

17.  Unlike more conventional advertisements, these text messages actually cost their recipients money, because cell phone users must frequently pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

18.  Over the course of an extended period beginning at a time within four years prior to the filing of this Complaint, Defendant and their agents directed the mass nationwide transmission of text messages to the cell phones of what they hoped were potential customers of Defendant's convenience store businesses.

19.  For instance, on or about October 31, 2019, Plaintiff Sousa's cell phone rang, indicating that a text call was being received.

20.  The "from" field of such transmission was identified cryptically as "711-711," which is an abbreviated telephone number known as an SMS short code licensed and operated by Defendant and their agents. The body of such text message read:

> "Reply with your Zipcode to confirm opt-in for auto dialed marketing txt msgs from 7-Eleven to this mobile #. Consent not required to buy goods/service"

21.  Defendant's use of an SMS short code enabled Defendant's mass transmission of text messages to a list of cellular telephone numbers.

22.  Defendant is, and at all times mentioned herein was, a "person", as defined by 47 U.S.C. § 153(39).

23.  All telephone contact in sending Plaintiff the unsolicited text message by Defendant on her cellular telephone occurred via an "automatic

telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or used "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

24.　Plaintiff did not provide "express consent" allowing Defendant to place a telephone call or to send a text message to Plaintiff's cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

25.　Defendant's text message to Plaintiff's cellular phone was not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

26.　Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute.[6]

27.　Plaintiff and all members of the Class have been harmed by the acts of Defendant in the form of multiple involuntary telephone and electrical charges, the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, and violations of their statutory rights. Plaintiff and putative Class Members suffered an invasion of privacy, as well as particularized and concrete injuries, which are real, actually exist, and are personal to the Plaintiff and to the class members, including the inducement of stress, anxiety, nervousness, embarrassment, distress, and/or aggravation. Plaintiff and putative Class Members also suffered out-of-pocket losses, including the monies paid to their wireless carriers for the receipt of such calls. Additionally, due to both the answered and unanswered calls placed by Defendant, Plaintiff and putative Class Members suffered the expenditure of their time, exhaustion of their cellular telephone batteries, unavailability of their cellular telephones while Defendant's texts / calls were incoming, and trespass upon their respective chattels. All of the above-mentioned injuries were caused by, are

---

[6] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

traceable to Defendant's conduct, and/or directly related to, Defendant's placement of text messages / calls to Plaintiff and putative Class Members by using an ATDS to dial or call their cellular telephone numbers.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated (hereinafter referred to as "the Class").

29.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons within the United States who received a non-emergency text message from 7-Eleven, or their agents, to a cellular telephone through the use of an automatic telephone dialing system within four years to the filing of this Complaint.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Class. Excluded from the Class are the Defendant, and any entities in which they have a controlling interest, their agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

30.     Plaintiff does not know the exact number of members in the Class, but based upon the size of the company and its stated business practices in making telephone calls, Plaintiff reasonably believes that Class members number at a minimum in the thousands. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. No Plaintiff, nor their counsel, has any interest adverse to those of the other members of the Class or each other.

31.     This Class Action Complaint seeks injunctive relief and money damages.

32.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.  The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.  The Class can be identified easily through records maintained by Defendant, and its agents.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

33.     The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to Plaintiff and to all of the other members of the Class as a result of the transmission of the text messages at issue as alleged herein. Plaintiff and the other Class members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct as a result of the transmission of the unlawful text messages.

34.     There are well defined, nearly identical, questions of law and fact affecting all parties.  The questions of law and fact involving the class claims predominate over questions which may affect individual Class members.  Those common questions of law and fact include, but are not limited to, the following:

    a.     Whether Defendant made non-emergency calls / text messages to Plaintiff's and Class members' cellular telephones using an automatic telephone dialing system;

    b.     Whether Defendant can meet their burden of showing they obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated), to make such calls;

c.  Whether Defendant's conduct was knowing and/or willful;

d.  Whether Defendant is liable for damages, and the amount of such damages; and

e.  Whether Defendant should be enjoined from engaging in such conduct in the future.

35.  As a person who received one or more text messages to her cellphone using an automatic telephone dialing system, without her prior express consent within the meaning of the TCPA and Rules, Plaintiff asserts claims that are typical of each Class member. Plaintiff will fairly and adequately represent and protect the interests of the Class, and has no interests which are antagonistic to any member of the Class.

36.  Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

37.  A class action is the superior method for the fair and efficient adjudication of this controversy. Class wide relief is essential to compel Defendant to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

Sousa v. 7-Eleven, Inc. Complaint         - 9 -

38. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

39. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

40. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

41. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class are entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

42. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

43. Plaintiff incorporates by reference the paragraphs 1 through 38, inclusive, of this Complaint as if fully set forth herein.

44.     The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including, but not limited to, each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

45.     As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500.00 in statutory damages for each and every call or text message in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

46.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Defendant's violation of the TCPA in the future. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

A.     Injunctive relief prohibiting such violations of the TCPA and UCL by Defendant in the future;

B.     As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

C.     As a result of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500.00 in statutory damages for each and every call or text message that violated the TCPA;

D.     An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class

and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

  F. Such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

  Plaintiff demands a trial by jury on all counts so triable.

Dated:  November 6, 2019

       By: */s/ Douglas J. Campion*
       Douglas J. Campion

       LAW OFFICES OF DOUGLAS J. CAMPION, APC
       16855 W. Bernardo Dr., Suite 255
       San Diego, CA 92127
       (619) 299-2091