1  WINSTON & STRAWN LLP
Daniel M. Blouin (admitted pro hac vice)
2  35 West Wacker Drive, Suite 4700
Chicago, Illinois 60601
3  (312) 558-5600
(312) 558-5700 (fax)
4  DBlouin@winston.com

5  SEYFARTH SHAW LLP
Robert B. Milligan (SBN 217348)
6  *rmilligan@seyfarth.com*
D. Joshua Salinas (SBN 282065)
7  *jsalinas@seyfarth.com*
2029 Century Park East, Suite 3500
8  Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
9  Facsimile:  (310) 201-5219

10  Attorneys for Defendants
7-ELEVEN, INC.
11

12                  **UNITED STATES DISTRICT COURT**

13                  **SOUTHERN DISTRICT OF CALIFORNIA**

14  KARLA Y. SOUSA, on behalf of herself   Case No. 3:19-cv-02142-JLS-BLM
and all others similarly situated,
15                                          **DEFENDANT'S NOTICE OF**
Plaintiff,                   **MOTION AND MOTION TO**
16                                          **COMPEL ARBITRATION AND**
**DISMISS OR STAY ACTION;**
17      v.                                  **MEMORANDUM OF POINTS**
**AND AUTHORITIES THEREOF**
7-Eleven, Inc.,
18                                          Date:       May 20, 2021
Defendant.              Time:       1:30 p.m.
19                                          Place:      Courtroom 4D
20                                          Hon. Janis L. Sammartino
21

22

23

24

25

26

27

28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on May 20, 2021 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Janis Sammartino in Courtroom 4D of the United States Courthouse located at 221 W. Broadway, San Diego, California, Defendant 7-Eleven, Inc. ("7-Eleven" or "Defendant") will, and hereby does, move this Court for an order compelling arbitration with respect to the claims asserted by Plaintiffs Grannan and Betancourt, and staying or dismissing this action under the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*

This motion is made on the grounds that a valid, enforceable, and irrevocable agreement to arbitrate the pending dispute exists between 7-Eleven and Plaintiffs Grannan and Betancourt.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Nathan Beran including exhibits, and upon such other and further oral and written materials as may be presented at or before the hearing on this matter.

DATED: March 22, 2021

Respectfully submitted,

WINSTON & STRAWN LLP

By: /s/ *Daniel M. Blouin*

Daniel M. Blouin

Attorneys for Defendant
7-ELEVEN, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

    **A.**     As 7Rewards Members, Grannan and Betancourt Received—and Affirmatively Accepted—the Terms and Conditions Applicable to the Program, Including the Arbitration Provision .................................... 2

    **B.**     The Terms and Conditions Contain an Enforceable Arbitration Provision ............................................................................................... 4

ARGUMENT ........................................................................................................... 5

    **A.**     The FAA Governs Enforcement of the Arbitration Provision .................. 5

    **B.**     Any Threshold Question Of Arbitrability Must Be Decided By The Arbitrator .............................................................................................. 7

    **C.**     Grannan's and Betancourt's Claims Should be Resolved Through Arbitration. .......................................................................................... 9

          **1.**     Grannan and Betancourt Entered Into a Valid and Binding Agreement To Arbitrate .......................................................... 9

          **2.**     Grannan's and Betancourt's Claims Fall Within the Scope of the Arbitration Agreement. ................................................... 11

    **D.**     Sousa's and Levine's claims also should be stayed pending the arbitration of Grannan's and Betancourt's claims. ............................... 14

CONCLUSION ...................................................................................................... 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
   513 U.S. 265 (1995).................................................................................. 5, 6

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013)..................................................................................... 11

*Am. Heritage Life Ins. Co. v. Lang*,
   321 F.3d 533 (5th Cir. 2003) ........................................................................ 9

*Arnold v. Homeaway, Inc.*,
   890 F.3d 546 (5th Cir. 2018) ........................................................................ 7

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)..................................................................................... 11

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986)..................................................................................... 12

*Beattie v. Credit One Bank*,
   No. 15-1315, 2016 WL 4203511 (N.D.N.Y. Aug. 9, 2016) ...................... 13

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ...................................................................... 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ................................................................. 9, 12

*Citgo Petroleum Corp. v. M/T Bow Fighter*,
   No. H-07-2950, 2009 WL 960080 (S.D. Tex. April 7, 2009)................... 14

*Clinton v. Jones*,
   520 U.S. 681, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) .......................... 14

*Cooper v. WestEnd Capital Management, L.L.C.*,
   832 F.3d 534 (5th Cir. 2016) ........................................................................ 8

*Cordas v. Uber Techs., Inc.*,
   2017 WL 658847 (N.D. Cal. Jan. 5, 2017)................................................... 8

*Deosaran v. Ace Cash Express, Inc.*,
　No. 16-919, 2017 WL 1318568 (N.D. Tex. Mar. 23, 2017) ................................. 13

*Dow Roofing Sys., LLC v. Great Comm'n Baptist Church*,
　No. 02-16-395-CV, 2017 WL 3298264 (Tex. App. Aug. 3, 2017, pet.
　denied) (mem. op.) ................................................................................................... 7

*Downer v. Siegel*,
　489 F.3d 623 (5th Cir. 2007) ................................................................................ 12

*First Options, Inc. v. Kaplan*,
　514 U.S. 938 (1995) ................................................................................................. 9

*Folse v. Richard Wolfe Med. Instruments Corp.*,
　56 F.3d 603 (5th Cir. 1995) ................................................................................... 13

*Garcia v. Trademark Construction Co.*,
　No. 18-cv-1214 (S.D. Cal. March 22, 2019) ...................................................... 14

*Gilmer v. Interstate/Johnson Lane Corp.*,
　500 U.S. 20 (1991) ................................................................................................... 5

*Grigson v. Creative Artists Agency, LLC*,
　210 F.3d 524 (5th Cir. 2000) ............................................................................. 5, 9

*Harvey v. Joyce*,
　199 F.3d 790 (5th Cir. 2000) ................................................................................ 11

*HomeAdvisor, Inc. v. Waddell*,
　No. 05-19-00669-CV, 2020 WL 2988565 (Tex. App. June 4, 2020) .......... 7, 10, 11

*Johnmohammadi v. Bloomingdale's, Inc.*,
　755 F.3d 1072 (9th Cir. 2014) ................................................................................ 7

*Knatt v. J. C. Penney Corp., Inc*
　2016 WL 1241550 (S.D. Cal. Mar. 30, 2016) ....................................................... 7

*Landis v. North Am. Co.*,
　299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ............................................... 14

*Lezell v. USAA Savings Bank*,
　No. 14-5483, 2016 WL 1212368 ......................................................................... 13

1
2
*Miller v. Time Warner Cable Inc.*,
   2016 WL 7471302 (C.D. Cal. Dec. 27, 2016)..........................................................8

3
4
*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)..................................................................................................13

5
6
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)........................................................................................................5

7
8
*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
   406 U.S. 1 (1983)......................................................................................................13

9
*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009) ...................................................................................9

10
11
*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*,
   139 F.3d 1061 (5th Cir. 1998) .................................................................................12

12
13
*Phillips v. Neutron Holdings, Inc.*,
   2019 WL 4861435 (N.D. Tex. Oct. 2, 2019) ...........................................................7

14
15
*In re Poly-America, L.P.*,
   262 S.W.3d 337 (Tex. 2008) .....................................................................................9

16
17
*Regan v. Pinger, Inc.*,
   No. 20-cv-02221-LHK, 2021 WL 706465 (N.D. Cal. Feb. 23, 2021)...................13

18
19
*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010)..................................................................................................7, 8

20
*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716,721 (9th Cir. 1999) ...........................................................................12

21
22
*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ..............................................................................12, 13

23
24
*Sparling v. Hoffman Construction Co.*,
   864 F.2d 635 (9th Cir. 1988) .....................................................................................7

25
26
*Tuck v. DirecTV*,
   2016, WL 6698938 (S.D. Cal. Nov. 15, 2016.).........................................................2

27
28
*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960)..............................................................................................11, 12

*Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989)........................................................................................... 5

*Webb v. Investacorp., Inc.*,
    89 F.3d 252 (5th Cir. 1996) ........................................................................... 9

*Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*,
    497 F. App'x 740 (9th Cir. 2012) ............................................................. 12

**Statutes**

9 U.S.C. § 1 ...................................................................................................... 6

9 U.S.C. § 3 ......................................................................................... 6, 7, 13

9 U.S.C. § 4 ...................................................................................................... 6

FAA section 2 ........................................................................................... 5, 6

Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*.................................. 1, 1, 15

TCPA ..................................................................................................... 12, 13

Telephone Consumer Protection Act, 47 U.S.C. §227 ............................... 1

**Other Authorities**

Rule 11(b) ........................................................................................................ 8

1  Defendant, 7-Eleven, Inc. ("7-Eleven") respectfully submits this Memorandum
2  of Law in Support of its Motion to Compel Arbitration and Dismiss or Stay Action.

3  ## INTRODUCTION

4  On November 6, 2019 Plaintiff Karla Sousa ("Sousa") initiated a putative class
5  action alleging that 7-Eleven sent an SMS text message to her cell phone without her
6  prior express consent, purportedly in violation of the Telephone Consumer Protection
7  Act, 47 U.S.C. §227 ("TCPA"). [Dkt. 1]. 7-Eleven filed its answer and affirmative
8  defenses to the Original Complaint on November 16, 2020. [Dkt. 17].

9  On March 8, 2021 Sousa filed a First Amended Complaint, [Dkt. 29] adding
10  three more named plaintiffs, specifically, Nancy Levine ("Levine"), Patrick Grannan
11  ("Grannan") and Christian Betancourt ("Betancourt"). Sousa and Levine allege in the
12  Amended Complaint that they received an unsolicited SMS text message from 7-
13  Eleven seeking confirmation of their desire to join 7-Eleven's loyalty program known
14  as 7Rewards. (Am. Cmpl. ¶ 30). Although not stated directly, Sousa and Levine infer
15  that they are not currently, nor in the past have they been 7Rewards members. In
16  contrast, Plaintiffs Grannan and Betancort expressly admit that they are 7Rewards
17  members. (Am. Cmpl. ¶¶ 43, 50).

18  As discussed in detail below, as 7Rewards members, Grannan and Betancourt
19  received, and affirmatively accepted, the Terms and Conditions applicable to 7-
20  Eleven's loyalty program.  Importantly, in accepting the Terms and Conditions,
21  Grannan and Betancourt agreed to arbitrate disputes with 7-Eleven, including the
22  dispute at issue in this case. They also specifically agreed to delegate all questions of
23  arbitrability to an arbitrator and to waive their right to participate in a class action,
24  either as a class representative or a class member. Pursuant to the Federal Arbitration
25  Act ("FAA"), 9 U.S.C. §§ 1 et seq., the arbitration agreement must be enforced, and
26  Grannan's and Betancourt's claims must be dismissed or, in the alternative, stayed
27  pending arbitration.  Given the related nature of the claims presented by Sousa and
28

1

Levine, 7-Eleven submits that such claims also should be stayed pending conclusion of the arbitration with Grannan and Betancourt.

# BACKGROUND

**A.    As 7Rewards Members, Grannan and Betancourt Received—and Affirmatively Accepted—the Terms and Conditions Applicable to the Program, Including the Arbitration Provision.**

7-Eleven launched a points-based customer loyalty program known as 7Rewards in the United States on November 8, 2017 ("7Rewards"). Declaration of Nathan Beran dated March 22, 2021 ("Beran Decl."), ¶2.)[1] Individuals can register for 7Rewards in one of five ways, specifically: (1) through use of a customer facing display ("CFD") located at a 7-Eleven store; (2) through a 'Text to Join process; (3) through a "Join at Fuel Pump" process; (4) via the 7-Eleven website; or (5) via the 7-Eleven App. Beran Decl. ¶3. Irrespective of the process through which an individual joins 7Rewards, members receive, and must affirmatively accept the applicable Terms and Conditions[2] to enroll in 7Rewards. *Id.,* ¶4.

Beginning in February 2019, an individual could join 7Rewards through a CFD located at a 7-Eleven store.  To do so, a customer entered his or her phone number into the CFD and clicked "continue".  If they had not previously registered for 7Rewards they were informed they would receive a text message to complete the registration process.  The text message included a link to the program's Terms and Conditions and instructed the customer to reply with their zip code to accept the Terms and Conditions. If the customer failed to respond with their zip code they were not enrolled in 7Rewards. In October 2019, 7-Eleven modified the CFD registration process.  Under the revised process, which remains in effect today, the CFD displays the Terms and

---

[1] "[O]n a motion to compel arbitration, a court may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Tuck v. DirecTV*, No. 16- CV-160 JLS KSG, 2016 WL 6698938 at *2 (S.D. Cal. Nov. 15, 2016.)

[2] A copy of the Terms and Conditions is attached to the Beran Declaration as Exhibit A.

Conditions and prompts the customer to click a button to acknowledge their acceptance of the Terms and Conditions.  Under the revised process, a customer is not enrolled in 7Rewards unless they click the "Agree and Join" button on the CFD. *Id.,* ¶5.

Beginning in February 2019, an individual could join 7Rewards through a "Text to Join" process.  To do so, an individual sent a text message to 711711 with the phrase "7Rewards". In response they would receive a text message to complete the registration process.  The text message included a link to the program's Terms and Conditions and instructed the customer to reply with their zip code to accept the Terms and Conditions. If the customer failed to respond with their zip code they were not enrolled in 7Rewards. *Id.,* ¶6.

An individual also could join 7Rewards through a "Join at Fuel Pump" process. To do so, a customer entered his or her phone number on a keypad at the fuel pump. They would then receive a text message to complete the registration process.  The text message included a link to the program's Terms and Conditions and instructed the customer to reply with their zip-code to accept the Terms and Conditions.  If the customer failed to respond with their zip code they were not enrolled in 7Rewards. *Id.,* ¶7.

Beginning in November 2017, an individual could join 7Rewards through the 7-Eleven website or through the 7-Eleven App.  Individuals who enrolled in the program in one of these manners were shown a link to the Terms & Conditions.  In order to complete the enrollment process they were required to click a check box to acknowledge their acceptance of the Terms and Conditions. *Id.,* ¶8.

Grannan and Betancourt admit that they are 7Rewards members. (Dkt. 29, ¶¶ 43, 50). As members, they received and accepted the Terms and Conditions applicable to the program and are bound by its terms. *Id.,* ¶4.

1
2

**B.     The Terms and Conditions Contain an Enforceable Arbitration Provision.**

3
4
5
6

The Terms and Conditions expressly provide in the introductory paragraph that they apply to individuals who have enrolled in 7Rewards. *Id.,* ¶10. Importantly, the Terms & Conditions for the points based 7Rewards program have always included an arbitration provision (the "Arbitration Provision").[3] *Id.,* ¶11.

7
8
9

The introductory paragraph of the Terms and Conditions highlights in bold, capitalized letters, the existence of the Arbitration Provision. Specifically, it provides as follows:

10
11
12

> NOTE THAT SECTION 12 OF THESE TERMS CONTAINS A MANDATORY ARBITRATION PROVISION THAT REQUIRES THE USE OF ARBITRATION ON AN IDIVIDUAL BASIS AND LIMITS THE REMEDIES AVAILABLE TO YOU IN THE EVENT OF CERTAIN DISPUTES.

13

*Id.,* ¶12.

14
15

The Arbitration Provision contained in the Terms and Conditions provides in relevant part as follows:

16

> Paragraph 12 captioned "Dispute Resolution; Binding Arbitration"

17
18
19

> PLEASE READ THE FOLLOWING SECTION CAREFULLY BECAUSE IT REQUIRES YOU TO ARBITRATE CERTAIN DISPUTES AND CLAIMS WITH 7-ELEVEN AND LIITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM US.

20
21
22
23
24
25

> … you and 7-Eleven agree (a) to waive your and 7-Eleven's respective rights to have any and all Disputes arising from or related to these Terms, or the Services resolved in a court, and (b) to waive your and 7-Eleven's respective rights to a jury trial.  Instead, any Dispute arising out of or relating to these Services, or these Terms will be settled by binding arbitration before JAMS, Inc. and in accordance with the JAMS Comprehensive Arbitration Rules and Procedures.  The rules of JAMS and additional information about JAMS are available on the JAMS website.  By agreeing to be bound by these terms, you either (a) acknowledge and agree that you have read and understand the rules of JAMS, or (b) waive your opportunity to read the rules of JAMS and any claim that the rules of JAMS are unfair or should not apply for any

26
27
28

---

[3] The language of the Arbitration Provision has not changed over time, other than potentially minor formatting and grammatical changes.
  *Id.,* ¶11.

1  reason. ANY SUCH DISPUTE SHALL BE ARBITRATED ON AN
2  INDIVIDUAL BASIS, AND SHALL NOT BE CONSOLIDATED IN
   ANY ARBITRATION WITH ANY DISPUTE OF ANY OTHER
3  PARTY. … (*capitalization in original*)

*Id.,* ¶13.

Notably, the Arbitration Provision provides 7Rewards members, including Grannan and Betancourt, with the ability to opt out of arbitration.  To do so, a member must provide written notice of their desire to opt out.[4] 7-Eleven keeps records of each 7Rewards member who has notified the company of a decision to opt out of the Arbitration Provision. 7-Eleven records do not reflect any notice from Patrick Grannan or Christian Betancourt opting out of the Arbitration Provision. *Id.,* ¶15.

## ARGUMENT

### A.    The FAA Governs Enforcement of the Arbitration Provision.

Arbitration is unquestionably favored under the law. *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 526 (5th Cir. 2000). Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The primary purpose of the FAA is to enforce private agreements to arbitrate according to their terms. *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). To that end, the FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Interpreting FAA section 2, the Supreme Court has held that the FAA governs any contract that is within the reach of Congress' Commerce Clause powers. *Allied-*

---

[4] The "opt out" language expressly provides as follows: "You have the right to opt out of binding arbitration within thirty (30) days of the date you first accepted the terms of this Section 12 by writing to: Attn: Legal Department, 3200 Hackberry Rd., Irving, TX 75063. In order to be effective, the opt-out notice must include your full name and clearly indicate your intent to opt out of binding arbitration." Berhan Affidavit, Exhibit A, para. 12.

1   *Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995). Under the Supreme

2   Court's expansive interpretation of FAA section 2, any arbitration provision that

3   affects interstate commerce is subject to the FAA. *See id.* at 277; see also 9 U.S.C. § 1

4   (defining "commerce" generally as interstate commerce). A "transaction" involves

5   interstate commerce for purposes of the FAA if it, in fact, affects interstate commerce,

6   regardless of whether the parties envisioned the transaction having any interstate

7   connection. *Id.* at 278.

8       The Arbitration Provision at issue in this case falls squarely within the ambit of

9   the FAA because it is contained in "a contract evidencing a transaction involving

10  [interstate] commerce" and represented "an agreement in writing to submit to

11  arbitration an existing controversy arising out of" an interstate-commerce transaction.

12  9 U.S.C. § 2. In this case, 7-Eleven, a Texas corporation, provided a program through

13  which Plaintiffs, residents of California and Oregon, could earn reward points. (Beran

14  Decl. ¶ 2.) Because this transaction affected interstate commerce, the FAA governs the

15  construction and application of the Arbitration Provision.

16      Under the FAA and binding precedent,[5] the Arbitration Provision that Grannan

17  and Betancourt accepted must be enforced. When a dispute is subject to arbitration,

18  the FAA mandates that "the court shall make an order directing the parties to proceed

19  to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

20  Accordingly, a dispute brought prematurely to court, such as this one, must at least be

21  stayed pending arbitration. See 9 U.S.C. § 3. A court also "may . . . dismiss [the action]

22  outright when . . . the court determines that all of the claims raised in the action are

23

24  ─────────────────

25  [5] The Terms and Conditions expressly provide that "Access to and use of any of the
    Services and these Terms are governed by the laws of the State of Texas and the United
    States as applicable therein, without resort to conflict of law provisions." *See* Berhan
26  Affidavit, Exhibit A, para. 12. Accordingly, citations to Texas and Fifth Circuit case
    law are provided in this memorandum. In many respects, California law is consistent
27  with Texas law. Thus, citations to California and Ninth Circuit cases also will be
28  provided.

1   subject to arbitration. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-
2   74 (9th Cir. 2014); *Sparling v. Hoffman Construction Co.*, 864 F.2d 635, 638 (9th Cir.
3   1988) ("This court held that 9 U.S.C. section 3 gives a court authority, upon
4   application by one of the parties, to grant a stay pending arbitration, but does not
5   preclude summary judgment when all claims are barred by the arbitration clause.
6   Thus, the provision did not limit the court's authority to grant dismissal in this case.");
7   *see, e.g.*, *Knatt v. J. C. Penney Corp., Inc.*, No. 15-CV-2516 JM (KSC), 2016 WL
8   1241550, at *4 (S.D. Cal. Mar. 30, 2016) (compelling arbitration and dismissing case).
9   Pursuant to these mandates, the Court should enter an order compelling arbitration of
10  the dispute between 7-Eleven and Grannan and Betancourt–and dismissing, or at a
11  minimum, staying this case.

12          **B.      Any Threshold Question Of Arbitrability Must Be Decided By The**
13                    **Arbitrator.**

14          The threshold question of arbitrability is for the parties to decide. "It is well
15  settled that parties can agree to arbitrate 'gateway' questions of arbitrability such as
16  unconscionability." *HomeAdvisor, Inc. v. Waddell,* No. 05-19-00669-CV, 2020 WL
17  2988565, at *4 (Tex. App. June 4, 2020) (citing *Rent-A-Ctr., W., Inc. v. Jackson,* 561
18  U.S. 63, 68–69 (2010)*; Arnold v. Homeaway, Inc.,* 890 F.3d 546, 552 (5th Cir.
19  2018); *Dow Roofing Sys., LLC v. Great Comm'n Baptist Church,* No. 02-16-395-CV,
20  2017 WL 3298264, at *3 (Tex. App. Aug. 3, 2017, pet. denied) (mem. op.))*.* Where
21  an agreement stipulates that arbitration rules will govern the arbitration of disputes—
22  as is the case here—this is "clear and unmistakable" evidence that the parties reserved
23  questions of arbitrability—including unconscionability—for the arbitrator. *Phillips v.*
24  *Neutron Holdings, Inc.,* 2019 WL 4861435, at *5 (N.D. Tex. Oct. 2, 2019) (holding
25  agreement incorporating JAMS rules provided "clear and unmistakable evidence of
26  the parties' intent to delegate questions of arbitrability and scope to the arbitrator.")
27
28

1    Here, the parties agreed that any arbitration must be administered by JAMS.[6]

2  In doing so, they also agreed that the arbitrator should determine issues related to

3  arbitrability. Specifically, JAMS Rule 11(b) states in relevant part as follows:

> "Jurisdictional and arbitrability disputes, including disputes over the
> formation, existence, validity, interpretation or scope of the agreement
> under which Arbitration is sought, and who are proper Parties to the
> Arbitration, shall be submitted to and ruled on by the Arbitrator. The
> Arbitrator has the authority to determine jurisdiction and arbitrability
> issues as a preliminary matter."

Where parties incorporate JAMS Rules into an arbitration agreement, "the

express adoption of these rules presents clear and unmistakable evidence that the

parties agreed to arbitrate arbitrability." *Cooper v. WestEnd Capital Management,*

*L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016)*; see also Brennan v. Opus Bank*, 796 F.3d

1125, 1130 (9th Cir. 2015). It is the rule of this Circuit, as well as "virtually every

circuit to have considered the issue," that incorporation of arbitration rules constitutes

clear and unmistakable evidence that contracting parties agreed to arbitrate

arbitrability. *Brennan*, 796 F.3d at 1130–31 (noting that there is no requirement that

the parties be sophisticated before a court may conclude that incorporation of

arbitration rules is clear and unmistakable evidence of intent to arbitrate arbitrability).

Here, the parties' incorporation of the JAMS rules, therefore, confirms that all

threshold matters are properly decided by the arbitrator. *See Cordas v. Uber Techs.,*

*Inc.*, 228 F. Supp. 3d 985, 991 (N.D. Cal. 2017) (holding that incorporation of

arbitration rules in consumer contract provided clear and unmistakable evidence of

the parties' intent to delegate questions of arbitrability to an arbitrator); *Miller v. Time*

*Warner Cable Inc.*, No. 16-CV-00329-CAS-ASX, 2016 WL 7471302, at *5 (C.D.

Cal. Dec. 27, 2016) (same). Succinctly stated, under the FAA and applicable case law,

the parties' agreement to delegate any question of arbitrability must be enforced like

any other. *See Rent-A-Ctr., W., Inc., v. Jackson*, 561 U.S. 63, 68-70 (2010) ("An

---

[6] *See* Terms and Conditions, a copy of which is attached to the Beran Declaration as
Exhibit A.

agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.")

> **C.     Grannan's and Betancourt's Claims Should be Resolved Through Arbitration.**

Should the Court nonetheless conclude that it must determine whether this dispute is arbitrable, the Court must decide two questions: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement." *Webb v. Investacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). The same test is applied under California law. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In answering these questions, courts "apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (internal quotation marks omitted). In this case, both questions must be answered in favor of arbitration.

> **1.     Grannan and Betancourt Entered Into a Valid and Binding Agreement To Arbitrate.**

To determine whether the parties formed a valid agreement to arbitrate, the Court applies "ordinary principles" of state contract law. *See Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537–38 (5th Cir. 2003)*; Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 531 (5th Cir. 2000)); *see also First Options, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, the Terms and Conditions contain a choice of law provision that provides for application of Texas law. Under Texas law, arbitration agreements are valid unless grounds such as fraud, unconscionability, or voidness under public policy exist for revocation of the agreement. *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). The burden of proving such grounds falls on the party opposing the contract. *Id.*

As discussed at length above, Grannan and Betancourt agreed to arbitrate their pending dispute with 7-Eleven when they joined 7Rewards and accepted the Terms and Conditions applicable to the program.  Specifically, the Terms and Conditions contain a prominent and explicit Arbitration Provision. The Arbitration Provision explained, in bold font and plain English, that Grannan and Betancourt were waiving their right to participate in a class action and to seek relief in a forum other than arbitration or small claims court. 7-Eleven gave Grannan and Betancourt the opportunity to opt out of the Arbitration Provision, but they did not do so. Bertan Decl. ¶ 15. Given these facts, there is no basis now for Grannan and Betancourt to avoid their agreement to arbitrate.

Indeed, well-settled case law clearly supports the position that Grannan and Betancourt are bound by the terms of the Arbitration Provision. *HomeAdvisor, Inc. v. Waddell*, No. 05-19-00669-CV, 2020 WL 2988565, at *4 (Tex. App. June 4, 2020). In *HomeAdvisor,* the Texas appellate court addressed a situation virtually identical to the one presented here–the enforceability of an arbitration agreement in what commonly is known as a "sign-in wrap agreement." The plaintiffs in *HomeAdvisor*, like Grannan and Betancourt, were notified of the existence of applicable terms and conditions (including an arbitration provision) when they signed up for the service in question. The Texas appellate court found that the defendant provided plaintiffs with reasonably conspicuous notice of the arbitration provision when the submittal page was clearly legible and provided plaintiffs with a hyperlink to the terms and conditions containing the arbitration provision. *Id*. In fact, the court found that "[s]imilar presentations have consistently been found to be conspicuous and to put the website user on inquiry/constructive notice of the website's terms of service. Indeed, more cluttered and complicated sign-in-wrap screens have been found to provide sufficient notice." *Id*. (internal citations omitted). Accordingly, the court reversed the trial court's order denying HomeAdvisor's motion to compel arbitration and remanded the

case with instructions to order the parties to arbitration and stay the underlying case pending the outcome of the arbitration.

Like the situation presented in *HomeAdvisor*, Grannan and Betancourt assented to the provisions set forth in the Terms and Conditions, including the Arbitration Provision that was prominently highlighted at the very beginning of the document. The terms were clearly contractual in nature and put Grannan and Betancourt on notice that the Terms and Conditions were contractual documents. A reasonable person would have understood, as Grannan and Betancourt surely did, that if they proceeded to join 7Rewards they would be bound by the Terms and Conditions of the program. Thus, Grannan and Betancourt manifested their consent to the conspicuous Arbitration Provision within the Terms and Conditions. The Arbitration Provision, therefore, must be "rigorously enforce[d]" as to Grannan and Betancourt. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).[7]

### 2. Grannan's and Betancourt's Claims Fall Within the Scope of the Arbitration Agreement.

Any doubts concerning the scope of an arbitration clause must be resolved in favor of coverage. *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000). When the scope of an arbitration provision is debatable or subject to reasonable doubt, arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960). If any interpretation of the clause exists that would place the dispute within the

---

[7] The Arbitration Provision expressly provides that "ANY SUCH DISPUTE SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS, AND SHALL NOT BE CONSOLIDATED IN ANY ARBITRATION WITH ANY DISPUTE OF ANY OTHER PARTY" Beran Decl., Exh. A. para. 12. The Supreme Court has held that such waivers of an individual's right to participate in a class action are valid and enforceable. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228  (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351-52 (2011). The class-action waiver therefore must be given effect, and arbitration must proceed on an individual basis.

1  scope of the arbitration provision, the dispute is arbitrable. *Downer v. Siegel*, 489 F.3d

2  623, 626 (5th Cir. 2007).

3                **(i)**        **The scope of the Arbitration Provision covers**

4                                  **Brannan's and Betancourt's claim.**

5        Plaintiffs' claims plainly fall within the scope of the Arbitration Provision,

6  which covers "any Dispute arising out of or relating to these Services… ." Beran Decl.

7  Ex. A. The term "Services" is expressly defined to include participation in the

8  7Rewards loyalty program. *Id*.  Similarly, the term "Dispute" is broadly defined to

9  include "any legal actions against 7-Eleven", with the exception of claims arising out

10 of or related to an individual's unlawful use of the Services or unlawful use of

11 intellectual property. *Id.* None of the identified "exceptions" are germane here. Indeed,

12 agreements to arbitrate "[a]ny dispute, controversy or claim" are "broad and far

13 reaching," *Chiron*, 207 F.3d at 1131, and require arbitration of all disputes that "touch

14 matters covered by the contract containing the arbitration clause." *Simula, Inc. v.*

15 *Autoliv, Inc.*, 175 F.3d 716,721 (9th Cir. 1999); *see also Pennzoil Expl. & Prod. Co. v.*

16 *Ramco Energy Ltd.,* 139 F.3d 1061, 1067–68 (5th Cir. 1998).

17       In any event, an agreement to arbitrate a particular dispute "should not be

18 denied unless it may be said with positive assurance that the arbitration clause is not

19 susceptible of an interpretation that covers the asserted dispute." *Paper, Allied-Indus.,*

20 *Chem. & Energy Workers Int'l Union Loc. No. 4-2001 v. ExxonMobil Ref. & Supply*

21 *Co.*, 449 F.3d 616, 620 (5th Cir. 2006) (quoting <u>United Steelworkers of America v.</u>

22 <u>Warrior & Gulf Nav. Co.</u>, 363 U.S. 574, 582–83 (1960)); *Wynn Resorts, Ltd. v. Atl.-*

23 *Pac. Capital, Inc.*, 497 F. App'x 740, 743 (9th Cir. 2012) (quoting *AT&T Techs., Inc.*

24 *v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

25               **(ii)**     **TCPA claims are not excluded from arbitration.**

26       In *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999), the Ninth Circuit

27 made clear that statutory claims must be arbitrated where an arbitration clause includes

28 broad language. Specifically, the court held that plaintiff's "allegation need only 'touch

matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Id.* at 721.  And last month, in *Regan v. Pinger, Inc.*, No. 20-cv-02221-LHK, 2021 WL 706465 (N.D. Cal. Feb. 23, 2021), the court upheld the arbitrability of a TCPA claim finding, among other things that the United States Supreme Court "has repeatedly admonished courts that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* at *10 (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 406 U.S. 1, 24-25 (1983)). *See also, Deosaran v. Ace Cash Express, Inc*., No. 16-919, 2017 WL 1318568, at *3 (N.D. Tex. Mar. 23, 2017) report and recommendation adopted, 2017 WL 1296453 (Apr. 7, 2017).[8]

In summary, Grannan and Betancourt expressly agreed to arbitrate their claims against 7-Eleven by virtue of the Arbitration Provision in the Terms and Conditions, which governs Disputes related to the 7Rewards program. As Plaintiffs' claims against 7-Eleven must be referred to binding arbitration, FAA section 3 mandates that the legal proceedings regarding Plaintiffs' claims must be stayed pending arbitration. See 9 U.S.C. § 3; *Folse v. Richard Wolfe Med. Instruments Corp*., 56 F.3d 603, 606 (5th Cir. 1995) ("[Section] 3 . . . is mandatory: If the issues in the case are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay.") (quoting Complaint of Hornbeck Offshore (1984) Corp., 981 F.2d 752, 754 (5th Cir. 1993)).

---

[8] Indeed, courts regularly enforce arbitration provisions in the context of TCPA claims. *See, e.g., Beattie v. Credit One Bank*, No. 15-1315, 2016 WL 4203511, at * 5 (N.D.N.Y. Aug. 9, 2016) (rejecting argument that TCPA claims are not subject to arbitration); *Lezell v. USAA Savings Bank*, No. 14-5483, 2016 WL 1212368, at * 2 (E.D.N.Y. Mar. 28, 2016), appeal dismissed (No. 16-1155, 2d Cir. Jan. 6, 2017) (rejecting plaintiffs' argument that TCPA claims should not be subject to arbitration, noting that "the Supreme Court has consistently reaffirmed that arbitration is a valid forum for the vindication of federal statutory rights") (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth , Inc*., 473 U.S. 614, 628 (1985)).

1
2

### D.    Sousa's and Levine's claims also should be stayed pending the arbitration of Grannan's and Betancourt's claims.

3  Plaintiffs Sousa and Levine have not alleged to be 7Rewards members.  Thus,
4  unlike Plaintiffs Grannan and Betancourt, 7-Eleven does not currently have a basis for
5  seeking an order compelling arbitration of Sousa's and Levine's claims.  Instead,
6  7-Eleven requests that Sousa's and Levine's claims be stayed pending the arbitration
7  of Grannan's and Betancourt's claims. As an initial matter, it is well established that
8  a "District Court has broad discretion to stay proceedings as incident to its power to
9  control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706, 117 S.Ct. 1636, 137
10  L.Ed.2d 945 (1997). "The power to stay proceedings is incidental to the power
11  inherent in every court to control the disposition of the causes of its docket with
12  economy of time and effort for itself, for counsel, and for litigants." *Landis v. North*
13  *Am. Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Moreover, under
14  Texas law, a discretionary stay of non-arbitrable claims is warranted when, as here,
15  many of the issues underlying the arbitrable claims overlap with the issues underlying
16  the non-arbitrable claims. In such cases it is appropriate to stay the non-arbitrable
17  claims in order to promote judicial efficiency and prevent inconsistent results. *See,*
18  *e.g., Citgo Petroleum Corp. v. M/T Bow Fighter*, No. H-07-2950, 2009 WL 960080,
19  *6 (S.D. Tex. April 7, 2009) (the court granted a discretionary stay because the same
20  facts and events gave rise to the claims, and many of the issues involved in this case
21  may be resolved in arbitration.). The same is true under the FAA and California law.
22  "[I]f a court finds that some, but not all, claims are subject to arbitration, it may stay
23  the claims not subject to arbitration while arbitration of the remaining claims is
24  pending." *Garcia v. Trademark Construction Co.*, No. 18-cv-1214, at 13 (S.D. Cal.
25  March 22, 2019) (granting defendant's motion to compel and staying other claims not
26  subject to arbitration). Here, many of the issues underlying Grannan's and
27  Betancourt's arbitrable claims overlap with the issues underlying Sousa's and
28  Levine's claims.  Given this overlap, it is appropriate to stay Sousa's and Levine's

1  claims pending the outcome of the arbitration proceeding with Grannan and
2  Betancourt.

3  <u>**CONCLUSION**</u>

4  For the foregoing reasons, 7-Eleven respectfully requests that this Court enter
5  an order compelling arbitration of the claims asserted by Plaintiffs Grannan and
6  Betancourt, and staying the remainder of this action under the Federal Arbitration Act,
7  9 U.S.C. §§ 1, *et seq*.

8  DATED: March 22, 2021                    Respectfully submitted,

9                                           WINSTON & STRAWN LLP

10

11                                          By:  /s/ *Daniel M. Blouin*

12                                               Daniel M. Blouin

13                                               Attorneys for Defendant
                                                 7-ELEVEN, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28